STATE v. S. B. PEARSON.

*Indictment for Burglary—Evidence, Sufficiency of—Accessory — Counsel, Address to Jury — Discretion of Trial Judge.*

1. Where one aids and abets the commission of a burglary, although he does not go within 40 feet of the house that is broken, he is equally guilty with the one who actually enters.

2. The facts recited in the opinion of the court held to be sufficient to be submitted to the jury on the question of defendant's guilt, the credibility and weight of such evidence being exclusively for the jury.

3. Where counsel for defendant in his argument addressed his remarks to certain members of the jury individually, instead of collectively it was not error in the judge to interrupt him, such matters being in the sound discretion of the trial judge.

INDICTMENT for burglary, tried before *Brown, J.*, and a jury, at Spring Term, 1896, of BURKE Superior Court. The facts appear in the opinion of Chief Justice FAIRCLOTH. The defendant was convicted and appealed.

*Attorney General, Messrs. I. T. Avery* and *S. J. Ervin,* for the State.

*Messrs. John G. Bynum* and *W. C. Newland,* for defendant (appellant).

FAIRCLOTH, C. J.: The defendants were indicted and charged with breaking and entering with a felonious intent, in the night time, the store-house, warehouse and building, the property of Collet & Jeter, then in the occupation and possession of J. H. McNeely, containing beer, wines and spirituous liquors, and of stealing and carrying away some of said property willfully and feloniously. The second count was withdrawn. Poteat was acquitted and

defendant Pearson was convicted, who excepted and appealed.

The eleventh prayer for instructions, to-wit, "Upon the whole evidence in the case there is not sufficient to convict Pearson," raises the principal question, which prayer was declined by the court.

It is admitted or proved that the basement in which the liquors were kept was broken into and entered during the night, and that some of the liquors were gone, and that much of it was poured out on the floor. Several witnesses were examined. J. W. Campbell testified that McNeely occupied the east end of the basement; that the bars and wooden grating were sawed in two, and that the day afterwards Pearson came to him and said, "Let us go and see the break in the basement." We did so and he said,"That's a damn sharp trick." He asked if McNeely had lost anything. I said yes. He said, "If this don't stop them, I have enough against them to stop them; McNeely shall not sell liquor in Morganton, they have done me dirty." I stated, I had lost about $300. Pearson said "Old fellow, if I had ·known that you had anything to do with this concern, I would not had it done for anything in the world." A few days before the breaking, Pearson told me "McNeely had not done him right and that he would have revenge." Pearson was bar-tender for McNeely, and quit ten or fifteen days before the basement was broken into. I had no interest in the liquor or the business."

C. G. Cain testified that on Sunday evening of the night of the breaking he saw Poteat and Pearson walking together near the railroad—no one with them.

Garrison said that about sun-up Sunday morning, he was at Pearson's when Poteat came, and Pearson got out of bed, and went out to see Poteat, and they appeared very friendly.

Queen testified : " The night the bar was broken into, I was near the postoffice about ten o'clock Sunday evening and saw three men come up in front of McNeely's bar. I know that Pearson was one ; he stopped in front of the bar, had a sack with something in it, and something like a pistol in the other hand ; one went down to the basement and was gone about a minute and reported to Pearson ; could not hear what they said ; heard Pearson say, ' That's all right, by God.' While one went down to the basement, one stood near the corner. I recognized Pearson's voice distinctly, did'nt know the others. I also recognized Pearson by his looks."

Sterling Avery testified : " Sunday night the bar was broken into I saw Pearson at nine o'clock, standing about 40 feet from McNeely's barroom, and he had something in his hand."

Without reciting any more of the evidence, we think the above was competent and sufficient to be submitted to the jury on the question of Pearson's guilt or innocence. The credibility and weight of the evidence were exclusively for the jury. *State* v. *Kiger*, 115 N. C., 746. The declaration of Poteat, found in the evidence of John McNeely, was carefully guarded by his Honor, who told the jury that the declaration was admitted only against Poteat and not against Pearson.

The exception that counsel was interrupted in his argument when addressing some of the jury individually instead of collectively can not be sustained. Such matters are discretionary with the judge, unless his discretion is abused, and it does not appear to have been so in this instance.

If A and B agree to commit burglary or other offence, and A breaks and enters, and B stands guard near by—on the lookout—in aid of the agreed offence, then both are

guilty.   Here, if it was true that Pearson was aiding and abetting the burglary and larceny charged, although he did not go within forty feet of the house broken into, he is equally guilty with the one who did enter.   Whether or not he was there, and with what intent and object, was for the jury to consider and decide.   We cannot see that the defendant was prejudiced by the answers of the witness, Beach, as to the character of the witness, Queen, for reasons given in *State* v. *Dove,* 10 Ired., 469 ; *Brown* v. *McKee,* 108 N. C., 387.

No Error.

AVERY, J., did not sit on the hearing of this case.