STATE v. WILLIAM HARRIS NICHOLS.

(Filed 21 September, 1966.)

**1. Burglary and Unlawful Breakings § 9—**

Evidence that gloves, tape, chisels, crowbars, hammers and punches were found in the middle of the night in a vehicle which had been parked near a supermarket, and that defendant had at least constructive possession of the implements, is sufficient to sustain a conviction of defendant of unlawful possession of implements of housebreaking.

**2. Burglary and Unlawful Breakings § 4—**

Evidence that defendant and his accomplice unlawfully broke open the door of a supermarket in the middle of the night is sufficient to sustain a conviction of breaking and entering, notwithstanding they did not physically enter the building, since the fact that the parties were frustrated before the accomplishment of the intended larceny does not exculpate them.

**3. Criminal Law § 50—**

Testimony of a witness that he observed the door of the building in question after the alleged offense and that the door was bruised as if someone had been beating on it, *is held* competent as a shorthand statement of fact.

**4. Criminal Law § 9—**

Persons present aiding and abetting each other in the commission of the offense are equally guilty without regard to which one actually commits the offense.

APPEAL by defendant from *Parker, J.,* at June 1966 Mixed Term of PITT County Superior Court.

The defendant and two others were charged in a bill of indictment with breaking and entering the Harris Super Market of Greenville on 18 March, 1966, and in a second count were charged with the unlawful possession of implements of housebreaking, to wit: A pry bar, two crow bars, one 8-pound sledge hammer, two punches and two chisels. All of the defendants were convicted, but only Nichols appealed from judgment pronounced upon the jury's verdict.

The evidence of the State tended to show that Sgt. R. B. Elks of the Greenville Police Force saw a car carrying a Maryland license tag in the vicinity of the Harris Super Market in Greenville about 2 o'clock on the morning of 18 March, 1966. It stopped at the front of the store and there two men got out, the driver remaining in the car. Sgt. Elks said he could tell the glass in the front of the Super Market was shaking and was being jarred, and the front door popped open about a foot and a half; that after the door came open the two men went back to the car and got in and pulled off. They got in the right-hand side, one in the front and one (Nichols) in the back. When they jumped back in the car they proceeded south and soon afterwards the officer stopped the car, the driver got out and came back to the police car and asked what the trouble was. The three men were placed under arrest and the car was searched. In it were found gloves, tape, chisels, crowbars, hammers, and several punches and other articles. The State's witnesses testified that they went back and examined the door of the Super Market and found marks on it. They were on the inner rail of the door where the door slides into the casing.

The evidence was that the store had been locked upon being closed for the night.

Mr. Durwood Harris testified for the State that he observed the lock on the door and it was unlocked, and it was bruised as if someone had been beating on it.

The defendant made a statement in the presence of the officers that he was from New York, while the car bore a Maryland license.

*Attorney General T. W. Bruton, Assistant Attorney General Millard R. Rich, Jr., for the State.*

*J. W. H. Roberts for defendant appellant.*

PER CURIAM. The defendant excepts to the failure of the court to allow his motion for judgment as of nonsuit at the close of the State's evidence and at the close of all the evidence, the defendants having offered none.

Taken in the light most favorable to the State the evidence shows that a man from New York in a Maryland car is in Greenville, North Carolina, at 2 o'clock in the morning; that he and another occupant of the car get out of it and go to the door of the Harris Super Market; that a sound of shaking is heard by the officer; and that the glass rattled and the door came open, and that immediately afterwards the two men get back in the car and leave. A few blocks away they are apprehended and an examination of the car discloses the possession of a combination of articles that indicate substantial evidence that they are not being intended for use in any legitimate business.

While gloves, tapes, chisels, crowbars, hammers and punches all have their honest and legitimate uses, when no explanation is offered for this combination of articles by a man several hundred miles from his home, in the middle of the night, it is ample to sustain a possession of wrongful and unlawful possession of tools used in store breaking.

The fact that the shaking of the door and its opening was not followed by a physical entrance into the building does not prevent a finding by the jury that they broke and entered the building. The officers' car was close by and the men apparently became frightened and nervous from the sound of glass and the opening of the door, and fled. They had actually opened the door although they had not entered and the crime was complete upon the finding by the jury of the overt act and felonious intent which was amply supported by the evidence.

In *State v. Smith*, 266 N.C. 747, 147 S.E. 2d 165, it is said: "If a person breaks or enters * * * with intent to commit the crime of larceny he does so with intent to commit a felony, without reference to whether he is completely frustrated before he accomplishes his felonious intent * * * (H)is criminal conduct is not determinable on the basis of the success of his felonious venture."

Another exception of the defendant is that the witness Harris was permitted to state that he observed the door and it was unlocked and it was bruised as if someone had been beating on it. He says that this constitutes an invasion of the province of the jury. However, it is merely what is known as a shorthand statement of facts, which is a well recognized method of permitting a witness to describe an incident or scene that can hardly be described in any other manner. When a witness says that a person appeared to be mad or happy or suffering, he is merely using the language that is generally used by people in describing such conditions and there is no better way to do so than that. This has been recognized by our Court as competent evidence for many, many years, and there is

no error in permitting the statement to stand. Strong's Index, Vol. 2, Evidence 36, p. 281, where several North Carolina cases are cited.

It is proper for a witness to state the "instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of persons, animals, and things, derived from observation of a variety of facts presented to the senses at one and the same time * * * it would be a hopeless task for the most gifted person to clothe in language all the minute particulars, with their necessary accompaniments and qualifications, which have led to the conclusions he has formed." *State v. Skeen,* 182 N.C. 844, 109 S.E. 71.

The defendant further complains at the court's instructions as to aiding and abetting which were to the effect that if three persons were present at the time the crime was committed, were acting together, aiding and abetting each other, that it would make no difference who did the physical act of breaking open the door. This is a correct statement of the law and constitutes no error. *State v. Pearson,* 119 N.C. 871, 26 S.E. 117; *State v. Ham,* 224 N.C. 128, 29 S.E. 2d 449.

The defendant further complains that the court's charge was deficient in that it did not sufficiently go into the question of the unlawful possession of tools used in store breaking, but upon consideration of the charge we find it is ample for this purpose. We, therefore, hold that in the trial of the case there was

No error.