STATE OF NORTH CAROLINA v. DENNIS WALDEN STOCKTON

No. 7123SC748

(Filed 29 December 1971)

1. **Burglary and Unlawful Breakings § 9— possession of burglary tools**

    In a prosecution under G.S. 14-55, the State has the burden of proving (1) the possession of an implement of housebreaking (2) without lawful excuse.

2. **Burglary and Unlawful Breakings § 10— possession of burglary tools — sufficiency of evidence**

    The State's evidence was sufficient for the jury in this prosecution for unlawful possession of implements of housebreaking where it tended to show that defendant and two companions were at a service station at 2:25 a.m., that the two companions were looking under the raised hood of an automobile and defendant was near some vending machines, that a satchel owned by defendant which was on the back seat of the car contained a gun case, two pairs of gloves, three screwdrivers, a pair of tin snips, a knife, a meat cleaver, a crowbar and five rings of vending machine keys, and that defendant had a .38 caliber pistol on his person.

3. **Constitutional Law § 31— right to be present at trial — waiver**

    Defendant on trial for a non-capital felony waived his right to be present during the trial and rendition of the verdict by voluntarily absenting himself after the first day of the trial.

4. **Constitutional Law § 31; Criminal Law § 134— right to be present at sentencing**

    A sentence imposing corporal punishment for any crime may not be pronounced against a defendant in his absence.

APPEAL by defendant from *Exum, Judge,* 21 June 1971 Session of Superior Court held in WILKES County.

Defendant was charged in a bill of indictment, proper in form, with the possession, without lawful excuse, of implements of housebreaking, to wit: "keys, knives, metal shears, screwdriver, prise bar and gloves," in violation of G.S. 14-55. He pleaded not guilty.

The evidence for the State tended to show that the defendant and two other men were observed at a service station in the Town of North Wilkesboro at 2:25 a.m. on 9 September 1970 by an officer of the North Wilkesboro Police Department. The two other men were looking under the raised hood of an automobile. (Apparently, there was actually nothing mechanically wrong with this automobile, as it was later driven away by an-

other police officer.) The defendant was standing near some coin-operated candy, cracker and soft-drink vending machines.

When the officer returned to investigate, he was asked to "give me your damned flashlight" by one of the men standing at the automobile but did not do so at that time. The defendant returned to the automobile from the vicinity of the vending machines but had no soft drink, candy or other product from the vending machines in his hands.

The officer, who had by then been joined by another policeman, saw an open black satchel in the back seat of the automobile and inquired about its ownership. The defendant thereupon voluntarily told the officer that the satchel was his and that it contained "some tools he worked with." The defendant then took the bag out of the car, opened it, and took from it one gun case, two pairs of gloves, three screwdrivers, one pair of tin snips, a knife, one meat cleaver, one crowbar, and five key rings on a large ring. Each key ring contained 15 to 18 keys that "were for drink boxes and cigarette machines and other various types." "Some of the keys were flat and some round and of different shapes." When the defendant removed the keys from the bag, the officer asked him why he had them, and the defendant replied that he had found the keys and the crowbar in the bathroom of a filling station a short time before but he did not remember where. He also informed the officers that he worked for a sheet metal company in Virginia and that "these tools were used on the job."

After the defendant had taken all the articles out of the bag, he was arrested for the unlawful possession of implements of housebreaking, and upon being searched was found to be carrying a .38 snub-nosed revolver, fully loaded, in his right rear pocket.

The other officer, and witness for the State, Robert Kyle, testified that the keys the defendant had in his bag "were returned to the Coca-Cola Company at Mt. Airy." No damage was done to the service station or to any of the machines there.

The defendant did not offer any evidence.

The jury returned a verdict of guilty as charged. The defendant was not present during the second day of the trial or when the verdict was rendered.

On Friday, 25 June 1971, the judge entered the following order:

> "Let the record show that as of Friday morning, June 25, 1971 the defendant, Dennis Walden Stockton, has not been apprehended and his whereabouts are still unknown to the court and to his counsel and the court finds that the defendant through his absence from court has waived his right to be present at the time of sentencing and the court is now ready to impose judgment. * * *"

After hearing from the defendant's attorney, the trial judge sentenced the defendant *in absentia* to not less than two years nor more than five years in prison. Defendant's attorney gave notice of appeal. (The record does not reveal whether the defendant has yet been apprehended.)

*Attorney General Morgan and Associate Attorney Sauls for the State.*

*Charles Neaves, and Porter & Conner by Kurt R. Conner for defendant appellant.*

MALLARD, Chief Judge.

The defendant was not present at the trial after the first State's witness was examined and cross-examined. Nor was he present when the verdict was rendered. Insofar as this record reveals, he is not at this time at a place where the superior court may exercise its jurisdiction over him personally by imposing a proper judgment on the verdict. The question, therefore, could be but has not been raised as to whether the defendant, by fleeing the jurisdiction of the court, has forfeited his right to appeal. See *State v. Keebler*, 145 N.C. 560, 59 S.E. 872 (1907). However, since no motion has been made to dismiss, we consider the appeal. *State v. Williams*, 263 N.C. 800, 140 S.E. 2d 529 (1965); *State v. Dalton*, 185 N.C. 606, 115 S.E. 881 (1923).

[1]　The pertinent part of the statute under which the defendant was tried, convicted and sentenced reads as follows:

> "If any person . . . shall be found having in his possession, without lawful excuse, any picklock, *key,* bit, or *other implement of housebreaking . . . ."* (Emphasis added.) G.S. 14-55.

Defendant contends that the trial judge committed error in failing to allow his motion for judgment of nonsuit at the conclusion of the evidence. The essential elements of the crime with which the defendant is charged are (1) the possession of *an* implement of housebreaking (2) without lawful excuse, and the State has the burden of proving both of these elements. *State v. Nichols,* 268 N.C. 152, 150 S.E. 2d 21 (1966) ; *State v. Morgan,* 268 N.C. 214, 150 S.E. 2d 377 (1966) ; *State v. Vick,* 213 N.C. 235, 195 S.E. 779 (1938) ; *State v. Styles,* 3 N.C. App. 204, 164 S.E. 2d 412 (1968). The State in this case was not required to prove that *all* the articles the defendant had in his possession were implements of housebreaking.

[2]   Defendant argues that the 75 to 90 keys he had were all designed solely to open vending machines and therefore were not implements of housebreaking. This argument is not persuasive. Moreover, the evidence does not support this argument. It is common knowledge that there are vending machines located inside as well as outside service stations and that keys and crowbars may be used to enter buildings. When the combination of articles possessed by the defendant, the lateness of the hour, the conduct of the defendant and his companions, and the totality of the circumstances in this case are considered, we think there was ample evidence to require submission of the case to the jury. *State v. Nichols, supra.* Furthermore, while some of the articles found in the possession of the defendant might logically be used in his alleged occupation of sheet metal worker, it strains the imagination to suppose that such work properly requires the use of items such as a gun case or a meat cleaver (or of a .38 caliber pistol carried on the person).

Defendant also contends that the trial judge committed error in proceeding with the trial in the absence of the defendant.

The trial started on Monday, 21 June 1971, but was not completed on that date. The defendant had not been placed in custody, and when court reconvened on Tuesday, 22 June 1971, he was not present in the courtroom. Upon inquiry by the judge, the defendant's privately-retained lawyer stated that he had not seen the defendant that morning and had had no communication from him. Thereupon, the trial judge sent the jury out, questioned defendant's attorney, and made the following finding:

"The court concludes that the trial having begun against Mr. Stockton he having had due notice of the trial and of the convening time of the court this morning and (sic) has waived his right to be here by not being present and the trial should proceed in his absence."

The court issued an *instanter capias* for the defendant, and the trial was resumed, with defendant's attorney participating but in the absence of the defendant. (The record does not reveal whether the defendant was under a bond for his appearance, but it does negative the idea that the defendant was in custody at the beginning of or during the trial.)

The defendant's attorney objected to the trial proceeding in the absence of the defendant but did not at that time or at any time during the trial or during that week offer any explanation for his client's absence, although he was requested by the judge to let him know if he heard anything from the defendant. Moreover, the defendant's attorney did not at the trial and does not in his brief filed in this court make any attempt to explain or excuse the defendant's absence from the trial. After the trial had commenced, the burden was on the defendant to explain his absence.

It is stated that the law in North Carolina is that a defendant charged with a capital crime cannot waive his right to be present at every stage of his trial. *State v. Moore,* 275 N.C. 198, 166 S.E. 2d 652 (1969). [*Moore* was decided before the decision of the Supreme Court of the United States in the armed robbery case of *Illinois v. Allen,* 397 U.S. 337, 25 L.Ed. 2d 353, 90 S.Ct. 1057 (1970), *rehearing denied,* 398 U.S. 915, 26 L.Ed. 2d 80, 90 S.Ct. 1684 (1970).] However, in felonies less than capital, it is well established that a defendant may personally waive his right to be present, and in misdemeanor cases, a defendant's right to be present may be waived by the defendant through his attorney with the consent of the court. *State v. Ferebee,* 266 N.C. 606, 146 S.E. 2d 666 (1966). In cases where a defendant is charged with less than a capital crime, his voluntary and unexplained absence from court after his trial begins constitutes a waiver of his right to be present. *State v. Turner,* 11 N.C. App. 670, 182 S.E. 2d 244 (1971); *Parker v. United States,* 184 F. 2d 488 (4th Cir. 1950); see 23 C.J.S., Criminal Law, § 1008, and 16 C.J.S., Constitutional Law, § 91.

[3, 4]   In this case the defendant, by voluntarily absenting himself after the first day of the trial, waived his right to be present during the trial and the rendition of the verdict. But when a sentence involving corporal punishment is imposed upon a verdict, either on a capital felony charge, a felony charge less than capital, or a misdemeanor, the defendant must be present. *State v. Ferebee, supra; State v. Pope,* 257 N.C. 326, 126 S.E. 2d 126 (1962) ; *State v. Brooks,* 211 N.C. 702, 191 S.E. 749 (1937) ; *State v. Cherry,* 154 N.C. 624, 70 S.E. 294 (1911).

The judgment of imprisonment in this case was imposed in the absence of the defendant and is therefore defective. It should be and is hereby set aside and vacated, and this cause is remanded to the superior court in Wilkes County for the imposition of a proper judgment with the defendant present, after his custody is obtained. *State v. Cherry, supra.*

Assignments of error 1, 2, 3, 4 and 6 are not discussed in defendant's brief, and under Rule 28 of the Rules of Practice in the Court of Appeals, they are deemed abandoned.

For the reason heretofore given, the judgment is set aside and the cause is remanded to the end that the superior court may issue proper process to have the defendant brought before it, and that the sentence may be lawfully imposed.

Remanded.

Judges HEDRICK and GRAHAM concur.