STATE OF NORTH CAROLINA v. FRANKLIN DeWAYNE WRIGHT, JAMES F. O'KELLEY, MICHAEL BRYANT WILLIAMS, LARRY WAYNE SHUE, AND BILLY EUGENE CAPEL

No. 7326SC186

(Filed 25 April 1973)

1. **Criminal Law § 92— consolidation of robbery charges against five defendants**

    The trial court did not err in consolidating for trial identical armed robbery charges against five defendants.

2. **Robbery § 4— armed robbery — only one defendant with firearm — other defendants guilty as principals**

    There was sufficient evidence to support the jury's verdict finding all five defendants guilty of an armed robbery in which an automobile was taken, notwithstanding only one defendant was shown to have had a firearm at the time the automobile was taken, where the evidence tended to show that the other four defendants were present and aided and abetted in the crime.

APPEAL by defendants from *Friday, Judge,* at the 21 August 1972 Schedule "C" Session of MECKLENBURG Superior Court.

By separate bills of indictment defendants were charged with the armed robbery of James Bernice Erwin (Erwin) on 9 August 1971; the property alleged to have been taken was a 1966 Chevrolet automobile. The cases were consolidated for trial and all defendants pleaded not guilty. (Defendants were also charged with kidnapping but the jury returned verdicts of not guilty as to that charge.) Evidence most favorable to the State tended to show:

Around 11:00 p.m. on 8 August 1971 all five defendants were at a lounge in or near Charlotte operated by one Trent. While there defendant Wright pointed a pistol at the head of a customer; Trent stuck his .32 cal. pistol in Wright's ribs and told him "if I heard a gun go off, that I would fire mine." Defendant Wright then left the lounge and in a few minutes returned with a single barrel shotgun which he stuck in Trent's side; defendant Wright told defendant Capel to get Trent's gun. The other three defendants were "surrounding" Trent. Trent knocked the shotgun upward and it went off, shooting a hole in the ceiling. All five defendants then ran from the lounge. Trent last saw defendants around 11:30 p.m.

On that same night, Erwin and Robert Herrin (Herrin), residents of Florida, were visiting relatives and friends who lived

in the Riverside Trailer Park near Charlotte. Around 12:45 a.m. Erwin and Herrin left the residence they were visiting, got in Erwin's Chevrolet and with Erwin driving proceeded to leave the trailer park. Two men (later identified as defendants Shue and Williams) stopped the car and demanded a ride to Charlotte; Shue had a pistol and pointed it at the car. Shue and Williams got in the back seat and Erwin proceeded to drive for some 100 yards to a telephone booth where he was stopped again. At that point three more men, later identified as defendants Wright, O'Kelley and Capel, got in the car, O'Kelley getting in the right front seat beside Herrin and Wright and Capel in the back seat. Neither Erwin nor Herrin knew either of the defendants.

Erwin proceeded on to a major highway and on toward Charlotte. After driving some twenty minutes, Erwin stated that his car was overheating and needed water. "They" gave Erwin permission to stop at a service station and get water. Erwin proceeded to stop at a station and while getting out of his car told Herrin to get out also and check the oil. Defendant O'Kelley ordered Herrin to stay in the car. While Erwin had the car hood open, the station operator went up to him; Erwin told the operator to "get my tag number, these boys have guns on me." He also told the operator to call the police. The operator went back into the station and picked up the telephone. About that time defendant Capel entered the station, ran his hand into his pocket and told the station operator it would be best for him to "hang up the phone."

After the station operator left him at the front of the car, Erwin heard someone in the car say "They are calling the law, shoot." Defendant Shue got out of the car and tried to throw Erwin down but Erwin got away, ran behind the station and on behind a church. As he was running he heard four, five or six gunshots. After defendant Capel told the station operator to hang up the phone, the operator, who had seen an automatic pistol in the hands of one of the occupants in the back seat, ran around the station and across the road to another station for purpose of calling police. As he was running he heard several gunshots. Herrin testified that defendant Wright was shooting at Erwin and the station operator as they ran.

Following the shooting, defendants Shue and Capel returned to the car, and defendant Shue proceeded to drive it toward Charlotte. Some one-quarter mile from the station, Her-

rin asked to be allowed to get out of the car; defendant Shue slowed down and Herrin jumped out into a ditch. Before jumping Herrin heard someone in the back seat say "Let him have it." As Herrin rolled over in the ditch, he heard gunshots as the car drove away. Herrin walked back to the station where police had arrived.

At about 1:50 a.m. of the same night, Charlotte Police Officer John Williams was on duty and saw defendant Wright come out of an alley and get into and drive off in a Ford pickup truck; the other four defendants were with Wright. Some five minutes later the pickup with the five defendants returned and proceeded down the alley. Officer Williams started down the alley on foot and saw a white car (later identified as Erwin's) in the alley with a small fire burning inside of it. Before the car started burning, Officer Williams saw defendant Wright walk away from the car and saw defendant O'Kelley standing nearby. After returning to his patrol car and radioing the dispatcher, Officer Williams drove down the alley and saw Erwin's car explode. He then radioed for police to be on the lookout for a one-half ton white pickup truck occupied by five white males and driven by defendant Wright.

Thereafter, at about 2:00 a.m., Officer Booth saw a blue and white Ford pickup truck in a driveway at 1709 Academy Street in the City of Charlotte. He and Officer Hagler approached the truck and saw defendants Shue, Williams, O'Kelley and Capel at the rear of the truck. Defendant O'Kelley had a shotgun and at the request of police threw it in the bed of the truck. The four were arrested. Defendant Wright came out of the house onto a lighted porch; he had a pistol in his hand. Defendant Wright then came on to the street and Officer Hagler ordered him to stop and drop the pistol. Defendant Wright put the pistol in his pocket and walked back into the house. The officers followed him into the house and arrested him.

The jury returned a verdict of guilty of armed robbery as to all defendants and from judgment imposing lengthy prison sentences, they appealed.

*Attorney General Robert Morgan by Rafford E. Jones, Assistant Attorney General, for the State.*

*T. O. Stennett for defendant appellant Wright.*

*Lila Bellar for defendants appellants O'Kelley and Williams.*

State v. Wright

W. Herbert Brown, Jr., for defendant appellant Shue.

Michael S. Shulimson for defendant appellant Capel.

BRITT, Judge:

[1] Defendants O'Kelley and Williams assign as error the consolidation of their cases for trial with the cases of the other three defendants. There is no merit in this assignment. The court is authorized by G.S. 15-152 to order the consolidation for trial of two or more indictments in which the defendants are charged with crimes of the same class and which are so connected in time or place that evidence at the trial on one of the indictments will be competent and admissible at the trial on the others. *State v. Bass,* 280 N.C. 435, 186 S.E. 2d 384 (1972); *State v. White,* 256 N.C. 244, 123 S.E. 2d 483 (1962). The assignment of error is overruled.

[2] All defendants except Wright assign as error the failure of the court to allow their motions for nonsuit, contending that the evidence was insufficient to make out a prima facie case of armed robbery as to each of them. The assignment has no merit. The gist of the argument on this assignment appears to be that since neither of the defendants asserting this assignment was shown to have a firearm at the time the automobile was taken from Erwin, the evidence was insufficient to survive their motions for nonsuit.

It is well settled in this jurisdiction that when two or more persons aid and abet each other in the commission of a crime, all being present, all are principals and equally guilty without regard to which one actually commits the offense. 2 Strong, N. C. Index 2d, Criminal Law, § 9, p. 492; *State v. Nichols,* 268 N.C. 152, 150 S.E. 2d 21 (1966); *State v. Kirby,* 3 N.C. App. 43, 163 S.E. 2d 911 (1968). We hold that the evidence was ample to make out a case and support a verdict of guilty of armed robbery as to each defendant.

Defendants assign as error various portions of the court's charge to the jury and the failure of the court to comply fully with G.S. 1-180 in charging the jury. Suffice to say, we have carefully reviewed the charge, with particular reference to the assignments, but conclude that the charge when considered contextually is free from prejudicial error. The assignments of error are overruled.

We have carefully considered the other assignments of error brought forward and argued in the briefs but find them to be without merit, and they, too, are overruled.

We conclude that defendants, and each of them, received a fair trial, free from prejudicial error.

No error.

Judges MORRIS and VAUGHN concur.