STATE OF NORTH CAROLINA v. BEVERLY YENETTE WHITTED

No. COA10-739

(Filed 15 February 2011)

## 1. Constitutional Law— competency to stand trial—failure to inquire sua sponte

The trial court erred in a case involving multiple charges by failing to inquire *sua sponte* into defendant's competency. There was substantial evidence indicating that defendant was possibly mentally incompetent during her trial. The case was remanded to the trial court for a determination of whether it could conduct a meaningful retrospective hearing on the issue of defendant's competency at the time of her trial.

## 2. Identification of Defendants— surveillance video—no plain error

The trial court did not commit plain error in a case involving multiple charges by permitting a detective to identify defendant as the person depicted in surveillance videos. Even if the admission of the testimony was error, it was not an exceptional, fundamental error which resulted in a miscarriage of justice or altered the jury's verdict.

## 3. Appeal and Error— preservation of issues—failure to object—plain error not argued

The Court of Appeals dismissed defendant's assertion that the trial court committed plain error in a case involving multiple charges by admitting out-of-court statements by her niece as substantive evidence. Defendant did not object to this evidence at trial and failed to argue plain error in her brief to the Court.

STATE v. WHITTED

[209 N.C. App. 522 (2011)]

**4. Sentencing— habitual felon—jury instructions—defendant's absence—instruction not warranted**

The trial court did not err in a case involving multiple charges by failing to instruct the jury about defendant's absence from the habitual felon phase of the trial. The trial court did not order defendant removed from the courtroom for being disruptive, but rather defendant asked that she be removed.

**5. Constitutional Law— right to be present at trial—oral waiver—no error**

The trial court did not err in a case involving multiple charges by accepting to be present at certain points during her trial because defendant voluntarily excused herself during certain portions of her trial.

**6. Sentencing— aggravating and mitigating factors—presumptive range—no misapprehension of law**

The trial court did not err in a case involving multiple charges by failing to recognize its ability to impose presumptive range sentences where the aggravating and mitigating factors were in equipoise. The trial court's comments about deficiencies in the judgment and conviction form did not reflect any misapprehension of the relevant sentencing law.

**7. Appeal and Error— preservation of issues—constitutional errors—not raised at trial**

Defendant's argument that she was denied substantive due process by the use of a taser, shackles, handcuffs and subterfuge to compel her presence in court was not properly before the Court of Appeals and was dismissed. Because defendant did not raise these constitutional issues at trial, she failed to preserve them for appellate review.

**8. Constitutional Law— effective assistance of counsel— no different result**

Defendant was not denied effective assistance of counsel in a case involving multiple charges where her trial attorney failed to make various objections or motions in five instances. The alleged errors did not alter the outcome of the trial.

Appeal by Defendant from judgments entered 14 January 2010 by Judge James F. Ammons, Jr., in Cumberland County Superior Court. Heard in the Court of Appeals 13 January 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Harriet F. Worley, for the State.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Barbara S. Blackman, for Defendant.*

STEPHENS, Judge.

On 5 and 26 January, 12 October, and 16 November 2009, the grand jury of Cumberland County returned indictments charging Defendant Beverly Yenette Whitted with felony breaking and entering of a motor vehicle, misdemeanor larceny, two counts of financial transaction card theft, two counts of financial transaction card fraud, common law robbery, obtaining property by false pretenses, larceny from the person, two counts of forgery of instrument, two counts of uttering forged instruments, conspiracy to commit larceny, and having attained the status of habitual felon. Following a trial at the 11 January 2010 criminal session of the superior court, a jury found Defendant guilty of all charges and also found that the felony breaking and entering of a motor vehicle and common law robbery offenses were aggravated due to the advanced age of two of the victims.

Defendant was determined to have a prior record level of IV. The trial court consolidated the felony breaking and entering of a motor vehicle, misdemeanor larceny, financial transaction card theft and financial transaction card fraud offenses into a single judgment and imposed an aggravated range term of 133 to 169 months in prison. The trial court consolidated the common law robbery and obtaining property by false pretenses charges and imposed an additional aggravated range sentence of 133 to 169 months in prison. Finally, the trial court consolidated the remaining offenses into a single judgment and imposed a presumptive range term of 132 to 168 months in prison, all sentences to be served consecutively. For the following reasons, we remand to the trial court for further proceedings.

The charges arise from a series of encounters between Defendant and her niece, Carlita Malloy, and three victims at grocery and discount stores in Fayetteville during July and August 2008. On 17 July 2008, 87-year-old Martha Sutton was grocery shopping in Fayetteville when she was approached by Defendant who struck up a conversation with

her about potato salad. Later, as Ms. Sutton drove home, she noticed a car following her too closely. When Ms. Sutton arrived at her home, the car pulled into her driveway behind her, and the driver, Defendant, got out and claimed that she had bumped Ms. Sutton's car. The passenger, another woman, remained in the car. Ms. Sutton got out of her own car, leaving the door open and her purse on the seat, and examined Ms. Sutton's bumper, but saw no fresh damage. As Ms. Sutton and Defendant examined the bumper, Defendant's accomplice, her niece, took Ms. Sutton's purse from her car. When Ms. Sutton said she was going to ask her son to come outside and look at the bumper, Defendant drove away quickly. Ms. Sutton did not realize her purse was missing until after Defendant's departure. Several of the credit cards from Ms. Sutton's purse were used to make unauthorized charges in excess of $300 at a number of local businesses.

On 28 July 2008, 84-year-old William Hancock was shopping at the same grocery store when he noticed Defendant and another woman hovering around him. As he drove home, Mr. Hancock felt the car behind him bump his vehicle, and as he pulled into his driveway, the car pulled in behind him. Defendant got out of the car, while another woman remained in the vehicle. Defendant told Mr. Hancock she had bumped into his car and asked to see his driver's license. When Mr. Hancock pulled out his billfold, Defendant grabbed it. In the ensuing struggle, Mr. Hancock grabbed part of Defendant's cell phone. He also was able to get part of Defendant's license plate number as she drove away. More than $170 worth of unauthorized charges were later made on Mr. Hancock's credit card at a local Wal-Mart.

On 6 August 2008, 57-year-old Shelva Womack was shopping at a Wal-Mart in Fayetteville when Defendant struck up a conversation with her. As they talked, Defendant's accomplice, another woman, took Ms. Womack's purse from her shopping cart, although Ms. Womack did not realize what had happened until after the two women had walked away. Ms. Womack testified that two checks from her purse were written without her authorization for a total of more than $200 and that her credit cards were used without authorization to make more than $400 worth of charges. At trial, Ms. Womack narrated a store surveillance video of the incident. In addition, Nonde Gordon, a clerk at a local grocery store, identified Defendant as the person shown on surveillance video using Ms. Womack's stolen checks.

Detective Jessica Navarro, then of the Fayetteville Police Department, testified that, after speaking to Mr. Hancock, she viewed

IN THE COURT OF APPEALS

surveillance videos from the grocery store where Mr. Hancock encountered Defendant and the Wal-Mart where Mr. Hancock's stolen credit card was used. Det. Navarro saw Defendant interacting with Mr. Hancock at the grocery store and then buying over $170 worth of merchandise at Wal-Mart using the stolen credit card. Det. Navarro also spoke to Ms. Sutton and watched surveillance video of her interaction with Defendant at the grocery store. These videos were shown to the jury. Det. Navarro testified that she had watched the Wal-Mart surveillance video of Defendant talking to Ms. Womack while Malloy stole her purse.

Det. Navarro then created a Crime Stoppers advertisement using a video still, which led to a tip regarding Defendant. When Det. Navarro arrived at Defendant's home to interview her, she noticed that Defendant was wearing a distinctive white shirt with three Xs across the front, apparently the same shirt she was seen wearing in several of the surveillance videos. Defendant admitted using the stolen credit card at Wal-Mart, but claimed she had found it in a Burger King bathroom. Det. Navarro later executed a search warrant for Defendant's home and found a number of items which had been purchased at Wal-Mart using Mr. Hancock's stolen credit card.

Malloy, who had earlier pled guilty to the same offenses with which Defendant was charged, was called to testify, but stated that she could not remember or confirm her statements to police about the incidents. Defendant did not offer any evidence.

On appeal, Defendant makes eight arguments: that the trial court committed plain error in (I) permitting a witness to identify her as the person depicted in surveillance videos, and (II) admitting out-of-court statements as substantive evidence; erred in (III) failing to instruct the jury about her absence from the habitual felon phase of the trial, (IV) accepting her trial counsel's oral waiver of her right to be present, and (V) failing to recognize its ability to impose presumptive range sentences where the aggravating and mitigating factors were in equipoise; and that she was denied (VI) a fair trial by the trial court's failure to inquire *sua sponte* into her competency, (VII) substantive due process by the use of a taser, shackles, handcuffs, and subterfuge to compel her presence in court, and (VIII) effective assistance of counsel. For the reasons discussed below, we remand to the trial court for further proceedings to address issue VI. We dismiss Defendant's arguments on issues II and VII. We find no error or no prejudicial error as to Defendant's remaining issues.

## Lack of Competency Hearing

[1] Defendant argues she was denied a fair trial by the trial court's failure to inquire *sua sponte* into her competency. We agree.

Section 15A-1001(a) of our General Statutes states:

No person may be tried, convicted, sentenced, or punished for a crime when by reason of mental illness or defect he is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner. This condition is hereinafter referred to as "incapacity to proceed."

N.C. Gen. Stat. § 15A-1001(a) (2009). Further,

under the Due Process Clause of the United States Constitution, [a] criminal defendant may not be tried unless he is competent. As a result, [a] trial court has a constitutional duty to institute, *sua sponte*, a competency hearing if there is substantial evidence before the court indicating that the accused may be mentally incompetent. In enforcing this constitutional right, the standard for competence to stand trial is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him.

*State v. Badgett*, 361 N.C. 234, 259, 644 S.E.2d 206, 221 (2007) (internal quotation marks and citations omitted). In addition, "a trial judge is required to hold a competency hearing when there is a bona fide doubt as to the defendant's competency even absent a request." *State v. Staten*, 172 N.C. App. 673, 678, 616 S.E.2d 650, 654-55 (2005). " 'Evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant' to a bona fide doubt inquiry." *State v. McRae*, 139 N.C. App. 387, 390, 533 S.E.2d 557, 559 (2000) (quoting *Drope v. Missouri*, 420 U.S. 162, 180, 43 L. Ed. 2d 103, 118 (1975)).

On appeal, Defendant offers the following as substantial evidence indicating that she was possibly mentally incompetent during her trial:

• At her first court hearing, the magistrate noted her past history of mental illness, specifically paranoid schizophrenia. Defendant rejected a favorable pretrial plea offer, remarking that her appointed counsel worked for the State.

• After opening statements, the trial court set a $75,000 cash bond. Defendant responded with an emotional outburst, telling the trial court she did not care whether she got life in prison. She also told the trial court she was guilty, stating, "That's what you want."

• On the third day of her trial, Defendant refused to return to the courtroom because she felt her rights were being violated, and stated she felt she could rely on her faith. When Defendant was brought forcibly into court, handcuffed to a rolling chair after having been tasered, she chanted loudly and sang prayers and religious imprecations, refusing to be silent or cooperate with trial proceedings.

• Later, for sentencing, Defendant was brought back to the courtroom strapped to a gurney, again singing, crying, screaming and mumbling as the trial court pronounced sentence.

In light of her history of mental illness, including paranoid schizophrenia and bipolar disorder, we conclude that Defendant's remarks that her appointed counsel was working for the State and that the trial court wanted her to plead guilty, coupled with her irrational behavior in the courtroom, constituted substantial evidence and created a *bona fide* doubt as to her competency. Thus, the trial court erred in failing to institute, *sua sponte*, a competency hearing for Defendant.

The State asserts that the trial court *did* make such an inquiry into Defendant's competency. On 11 January 2010, at the start of trial, defense counsel mentioned that Defendant had recently undergone shoulder surgery and was taking pain medication. The trial court then asked Defendant and her trial counsel whether the medication was impairing her ability to understand the proceedings or her decision to reject the plea bargain being offered by the State. Both replied that it was not. The trial court also asked Defendant about her ability to read and write, and whether she understood the charges against her. However, as the State acknowledges, the trial court's inquiry was only into the effects of the pain medication Defendant was taking.

More importantly, the trial court's limited inquiry was not timely. The trial court questioned Defendant about the effects of her medication on 11 January 2010, but her refusal to return to the courtroom and resulting outbursts occurred two days later on 13 January 2010. As this Court as previously noted in *McRae*, a defendant's

competency to stand trial is not necessarily static, but can change over even brief periods of time.

In *McRae*, the defendant, who suffered from schizophrenia, underwent at least six psychiatric evaluations over a seventeen-month period prior to his first trial; at some points the defendant was found competent to stand trial and at others he was not. 139 N.C. App. at 390-91, 533 S.E.2d at 559-60. Immediately after a hearing finding him competent, the defendant went to trial. *Id.* at 391, 533 S.E.2d at 560. Following a mistrial, the defendant was again evaluated and found competent, but five days elapsed between the date of the hearing and the start of the defendant's second trial, "and the trial court did not conduct a post-evaluation competency hearing before [the] second trial." *Id.* On appeal, we held that the trial court erred in not conducting a competency hearing before the second trial, noting "concern about the temporal nature of [the] defendant's competency." *Id.*

By statute, "*[w]hen the capacity of the defendant to proceed is questioned,* the court *shall* hold a hearing to determine the defendant's capacity to proceed." N.C. Gen. Stat. § 15A-1002(b) (2009) (emphasis added). As recognized by *McRae*, defendants can be competent at one point in time and not competent at another. Thus, assuming *arguendo* that the trial court's limited 11 January 2010 questioning of Defendant constituted a competency hearing, it could not have addressed the *bona fide* doubt about Defendant's competency which arose on 13 January 2010.

Following the procedure employed in *McRae*, we remand to the trial court for a determination of whether it can conduct a meaningful retrospective hearing on the issue of Defendant's competency at the time of her trial. 139 N.C. App. at 392, 533 S.E.2d at 560-61 ("The trial court is in the best position to determine whether it can make such a retrospective determination of [a] defendant's competency."). On remand,

> if the trial court concludes that a retrospective determination is still possible, a competency hearing will be held, and if ,the conclusion is that the defendant was competent, no new trial will be required. If the trial court determines that a meaningful hearing is no longer possible, defendant's conviction must be reversed and a new trial may be granted when [she] is competent to stand trial.

*McRae*, 139 N.C. App. at 392, 533 S.E.2d at 561. Because it is possible that, on remand, the trial court will conclude that a retrospective

competency determination is still possible, and, following the resulting hearing, that Defendant was competent and no new trial is required, we now address Defendant's remaining issues on appeal.

### Admission of Identification Evidence

[2] Defendant argues that the trial court committed plain error in permitting Det. Navarro to identify her as the person depicted in surveillance videos. We disagree.

Because Defendant did not object to the admission of this evidence at trial, we review only for plain error. *State v. Locklear*, 363 N.C. 438, 449, 681 S.E.2d 293, 303 (2009). "We reverse for plain error only in the most exceptional cases, . . . and only when we are convinced that the error was either a fundamental one resulting in a miscarriage of justice or one that would have altered the jury's verdict." *Id.* (citations omitted).

Here, Det. Navarro testified that Defendant was the person depicted using a stolen credit card in two surveillance videos from a Wal-Mart and using stolen checks in surveillance videos from a grocery store. Defendant contends that this lay opinion testimony constitutes plain error in that it likely "tilted the scales" and resulted in her conviction. We are not persuaded. Assuming without deciding that the admission of Det. Navarro's testimony was error, we do not believe it was an exceptional, fundamental error which resulted in a miscarriage of justice or altered the jury's verdict. The evidence of Defendant's guilt was overwhelming and included identification of Defendant by each of the three victims, the head security manager of the Wal-Mart where items were purchased using a stolen credit card, and the cashier of the grocery store where stolen checks were used. In addition, items purchased using Mr. Hancock's stolen credit card were found in Defendant's home and Defendant admitted to Det. Navarro that she had used a stolen credit card at Wal-Mart. Finally, the State introduced various surveillance videos which showed Defendant encountering Ms. Sutton and Mr. Hancock in the grocery store, and cashing stolen checks. We do not believe that, absent Det. Navarro's lay opinion testimony that Defendant was the person depicted in the surveillance videos, the jury would have returned verdicts of not guilty. Thus, Defendant cannot meet her burden to show plain error, and we overrule this argument.

**STATE v. WHITTED**

[209 N.C. App. 522 (2011)]

*Admission of Out-of-court Statements*

[3] Defendant next asserts that the trial court committed plain error by admitting out-of-court statements by her niece, Carlita Malloy, as substantive evidence. Because Defendant did not object to this evidence at trial and also fails to argue plain error in her brief to this Court, we dismiss.

As noted above, to prevail on a claim of plain error, a defendant must show that an error "was either a fundamental one resulting in a miscarriage of justice or one that would have altered the jury's verdict." *Locklear*, 363 N.C. at 449, 681 S.E.2d at 303. Defendant concedes that she did not object at trial to the admission of pre-arrest and post-arrest statements by Malloy, but now asserts that their admission constituted plain error. However, Defendant fails to explain the contents of Malloy's statements or how their admission resulted in a miscarriage of justice or altered the jury's verdict. Such a bare "assertion of plain error, without supporting argument or analysis of prejudicial impact, does not meet the spirit or intent of the plain error rule." *State v. Cummings*, 352 N.C. 600, 637, 536 S.E.2d 36, 61 (2000). Because Defendant fails to make the requisite arguments and analysis in her brief, she fails to argue plain error. Accordingly, we dismiss her contentions on this issue.

*Instruction Regarding Defendant's Absence from Courtroom*

[4] Defendant also argues that the trial court erred in failing to instruct the jury about her absence from the habitual felon phase of the trial. We disagree.[1]

Defendant contends that the trial court violated the mandate of N.C. Gen. Stat. § 15A-1032 which provides, in pertinent part:

(a) A trial judge, after warning a defendant whose conduct is disrupting his trial, may order the defendant removed from the trial if he continues conduct which is so disruptive that the trial cannot proceed in an orderly manner. When practicable, the judge's warning and order for removal must be issued out of the presence of the jury.

---

1. Our discussion on this and the following issue presumes that, on remand to the trial court, Defendant will be found to have been competent throughout her trial. In the event that either Defendant is found to have been incompetent or that the trial cannot conduct a retroactive competency hearing, Defendant will receive a new trial and these issues will be moot.

(b) If the judge orders a defendant removed from the courtroom, he must:

. . .

(2) Instruct the jurors that the removal is not to be considered in weighing evidence or determining the issue of guilt.

N.C. Gen. Stat. § 15A-1032 (2009). However, our review of the record reveals that the trial court did not order Defendant removed from the courtroom for being disruptive, but rather that she asked to be removed. Defendant refused to return to the courtroom for the habitual felon phase of her trial. The trial court had Defendant brought into the courtroom handcuffed to a rolling chair, at which point she began to sing and chant and behave in a generally disruptive manner. The trial court then asked counsel for Defendant and the State if they wished to have Defendant removed, and all agreed this would be best. However, the trial court then addressed Defendant directly and asked her whether she wished to return to the holding cell. Defendant ignored the trial court's questions twice, but after he asked a third time, she stopped chanting and replied, "Put me back where I was." The trial court inquired several more times to be sure that Defendant understood his question and to clarify that she wanted to return to the holding cell and give up her right to be present during her trial. Defendant responded that she did. The trial court then made a finding that Defendant had voluntarily waived her right to be present at the habitual felon phase of her trial. Because the trial court did not order Defendant removed from the courtroom, the requirements of N.C. Gen. Stat. § 15A-1032(b) were not triggered. Defendant's argument on this issue is overruled.

*Oral Waiver of Right to be Present*

[5] Defendant next argues that the trial court erred in accepting her trial counsel's oral waiver of her right to be present. We disagree.

Specifically, Defendant contends that the trial court violated the requirements of N.C. Gen. Stat. § 15A-1011 in accepting her trial counsel's oral waiver of her right to be present at certain points during her trial. Section 15A-1011 is entitled "Pleas in district and superior courts; waiver of appearance" and specifies that

(d) A defendant may execute a written waiver of appearance and plead not guilty and designate legal counsel to appear in his behalf in the following circumstances:

(1) The defendant agrees in writing to waive the right to testify in person and waives the right to face his accusers in person and agrees to be bound by the decision of the court as in any other case of adjudication of guilty and entry of judgment, subject to the right of appeal as in any other case; and

(2) The defendant submits in writing circumstances to justify the request and submits in writing a request to proceed under this section; and

(3) The judge allows the absence of the defendant because of distance, infirmity or other good cause.

N.C. Gen. Stat. § 15A-1011(2009). This statute applies to a defendant's waiver of her right to be present for entry of pleas. Beyond the statute's title and plain language, we also note that section 15A-1011 is part of Chapter 15A, Article 57 entitled "Pleas." This statute is not applicable where a defendant waives her right to be present at other times during her trial.

"It is well established that both the United States and North Carolina Constitutions provide criminal defendants the right to confront their accusers at trial." *State v. Richardson*, 330 N.C. 174, 178, 410 S.E.2d 61, 63 (1991). However,

[i]n noncapital felony trials, this right to confrontation is purely personal in nature and may be waived by a defendant. *State v. Braswell*, 312 N.C. 553, 558, 324 S.E.2d 241, 246 (1985); *State v. Hayes*, 291 N.C. 293, 296-97, 230 S.E.2d 146, 148 (1976); *State v. Moore*, 275 N.C. 198, 208, 166 S.E.2d 652, 659 (1969). A defendant's voluntary and unexplained absence from court subsequent to the commencement of trial constitutes such a waiver. *State v. Wilson*, 31 N.C. App. 323, 229 S.E.2d 314 (1976); *State v. Mulwee*, 27 N.C. App. 366, 219 S.E.2d 304 (1975). Once trial has commenced, the burden is on the defendant to explain his or her absence; if this burden is not met, waiver is to be inferred. *State v. Austin*, 75 N.C. App. 338, 330 S.E.2d 661 (1985); *State v. Stockton*, 13 N.C. App. 287, 185 S.E.2d 459 (1971).

*Id.* In *Richardson*, the Supreme Court went on to discuss examples of waiver of the right to confront:

Whether such a burden has been satisfied has been the subject of numerous appellate decisions. In *State v. Stockton*, 13 N.C. App. 287, 185 S.E.2d 459, for instance, defendant was present during

STATE v. WHITTED

[209 N.C. App. 522 (2011)]

the first day of his trial but failed to appear when the trial recommenced on the second day. Upon inquiry by the trial judge, defense counsel related that he had neither seen nor heard from defendant. Thereafter, the court concluded that defendant Stockton had due notice of the time that his trial was to recommence and that his absence amounted to a waiver. On appeal, the Court of Appeals agreed, concluding that the defendant voluntarily absented himself after his first day of trial and therefore waived his right to be present during the trial and rendering of the verdict. *Id.* at 292, 185 S.E.2d at 463. Findings of no error under similar circumstances have repeatedly been reached by this Court, as well as the Court of Appeals. *State v. Kelly,* 97 N.C. 404, 2 S.E. 185 (1887); *State v. Austin,* 75 N.C. App. 338, 330 S.E.2d 661 (1985); *State v. Potts,* 42 N.C. App. 357, 256 S.E.2d 497 (1979); *State v. Montgomery,* 33 N.C. App. 693, 236 S.E.2d 390, *disc. rev. denied and appeal dismissed,* 293 N.C. 256, 237 S.E.2d 258 (1977); *State v. Wilson,* 31 N.C. App. 323, 229 S.E.2d 314 (1976).

*Id.* at 178-79, 410 S.E.2d at 63.

Here, defendant was present at entry of her plea of not guilty to all charges on 5 June 2009, and, thus, N.C. Gen. Stat. § 15A-1011 is inapplicable. However, as discussed above, defendant asked to be returned to the holding cell during the habitual felon phase of her trial. Defendant also refused to return to the courtroom for guilt-phase closing arguments and for the aggravating factor phase of her trial. Because Defendant voluntarily absented herself during certain portions of her trial, she waived her right to be present at those points. This argument is overruled.

### *Sentencing*

**[6]** Defendant also argues that the trial court erred in failing to recognize its ability to impose presumptive range sentences where the aggravating and mitigating factors were in equipoise. We disagree.

Defendant contends that the trial court was under a misapprehension of law when it imposed aggravated sentences for felony breaking and entering of a motor vehicle and common law robbery. Specifically, Defendant asserts that the trial court was under the mistaken impression that it could not impose a presumptive range sentence where the jury found a single aggravating factor and where the trial court itself found a single mitigating factor. We review *de novo*

allegations that a trial court has failed to recognize its discretion to act. *State v. McAvoy*, 331 N.C. 583, 591, 417 S.E.2d 489, 495 (1992).

Under the Structured Sentencing Act, the trial court "shall consider evidence of aggravating or mitigating factors present in the offense that make an aggravated or mitigated sentence appropriate, but the decision to depart from the presumptive range is in the discretion of the court." N.C. Gen. Stat. § 15A-1340.16(a) (2009). "Even assuming evidence of aggravating or mitigating factors exists, the Act leaves the decision to depart from the presumptive range 'in the discretion of the trial court.' " *State v. Norris*, 360 N.C. 507, 512, 630 S.E.2d 915, 918 (2006) (quoting N.C. Gen. Stat. § 15A-1340.16(a)).

During sentencing, the trial court remarked that the judgment and conviction form allowed it to check only two alternatives when weighing the aggravating and mitigating factors: that the aggravating factors outweighed the mitigating factors, or vice versa. The trial court then stated that the form does not allow for a trial court to indicate that the aggravating and mitigating factors are in equipoise. Defendant contends that these remarks indicate that the trial court did not realize it had the discretion to impose a sentence in the presumptive range despite the aggravating and mitigating factors being in equipoise. However, we do not believe these comments about deficiencies in the form reflect any misapprehension of the relevant sentencing law. Indeed, our review of the transcript reveals a comment by the trial court that "one aggravator can outweigh 15 or 20 mitigators." This remark clearly indicates the trial court's awareness of its discretion in weighing the aggravating and mitigating factors. This argument is overruled.

*Denial of Substantive Due Process*

[7] Defendant next argues that she was denied substantive due process by the use of a taser, shackles, handcuffs and subterfuge to compel her presence in court. We conclude that this issue is not properly before us and dismiss this argument.

In making this argument, Defendant relies on the protections of due process in the United States and North Carolina Constitutions. However, we note that Defendant did not object on these grounds or raise these arguments in the trial court. Assertions of constitutional error "will not be considered for the first time on appeal." *State v. Chapman*, 359 N.C. 328, 360, 611 S.E.2d 794, 822 (2005) (citations omitted). Because Defendant did not raise these constitutional issues

at trial, she has failed to preserve them for our review and they are waived. Accordingly, Defendant's arguments on this issue are dismissed.

### Ineffective Assistance of Counsel

[8] Lastly, Defendant argues that she was denied effective assistance of counsel in that her trial attorney failed to make various objections or motions in five instances. We disagree.

> In order

> [t]o successfully assert an ineffective assistance of counsel claim, defendant must satisfy a two-prong test. First, [she] must show that counsel's performance fell below an objective standard of reasonableness. Second, once defendant satisfies the first prong, [she] must show that the error committed was so serious that a reasonable probability exists that the trial result would have been different absent the error.

*State v. Blakeney,* 352 N.C. 287, 307-08, 531 S.E.2d 799, 814-15 (2000) (citations omitted), *cert. denied,* 531 U.S. 1117, 148 L. Ed. 2d 780 (2001). Further, "if a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient." *State v. Braswell,* 312 N.C. 553, 563, 324 S.E.2d 241, 249 (1985).

Specifically, Defendant argues that her trial counsel's perform-ance fell below an objective standard of reasonableness in that he failed to: request a competency hearing; ensure the trial court was familiar with her history of mental illness; properly preserve for appeal the denial of her motion to require the State to conduct a photo lineup identification; move for dismissal, mistrial or a continuance when Defendant had to be brought into the courtroom handcuffed to a rolling chair; seek a jury instruction on her absence from the court-room during various portions of the trial; and object to the admission of Malloy's statements, and Det. Navarro's identification of Defendant in surveillance videos and her comment that she had compared the surveillance video images to a police mug shot of Defendant.

Given the overwhelming evidence against Defendant, we do not believe that her trial counsel's failure to preserve for appeal the trial court's denial of her motion to require the State to conduct a photo lineup identification altered the outcome of the trial. Likewise, we do

not believe that trial counsel's failure to move for dismissal, mistrial or a continuance when Defendant had to be brought into the courtroom handcuffed to a rolling chair altered the outcome of her trial since this event took place outside the presence of the jury. We also conclude that, even had trial counsel sought a jury instruction on Defendant's absence and objected to the admission of Malloy's statements or Det. Navarro's testimony, the overwhelming evidence against Defendant would likely have led to the same jury verdicts of guilty on all charges. Accordingly, these arguments are overruled.

Our remand for a retroactive competency hearing, or in the event the trial court concludes that it cannot conduct such a hearing, our reversal of the judgments against her and order of a new trial, provides Defendant with the relief to which she would be entitled if we held that she had received ineffective assistance of counsel on these issues.

Dismissed in part; no error in part; no prejudicial error in part; and remanded for further proceedings not inconsistent with this opinion.

Judges GEER and STROUD concur.