An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-724

NORTH CAROLINA COURT OF APPEALS

Filed: 18 March 2014

STATE OF NORTH CAROLINA

|  |  |
|---|---|
| v. | Wake County |
|  | Nos. 11 CRS 228201, 3448 |
| EUGENE OLIVER DENNING |  |

Appeal by defendant from judgment entered 6 December 2012 by Judge Paul C. Ridgeway in Wake County Superior Court. Heard in the Court of Appeals 19 November 2013.

>  *Attorney General Roy Cooper, by Assistant Attorney General M. Denise Stanford, for the State.*

>  *S. Hannah Demeritt for defendant-appellant.*

BRYANT, Judge.

Because there was sufficient evidence that defendant was competent to proceed, the trial court did not err by failing to *sua sponte* hold a competency hearing, and where the copies of identification defendant submitted to the bank were admissible as corroborating evidence, the trial court did not err in admitting such.

On 4 June 2012, defendant Eugene Oliver Denning was indicted on charges of felonious breaking and entering, attempted obtaining property by false pretense, and larceny of chose in action. On 5 June 2012, defendant was indicted on the charge of attaining habitual felon status.

Prior to trial, on 2 October 2012, the trial court addressed a motion by defendant to represent himself. The court found that defendant was capable of proceeding but lacked the capacity to represent himself and denied the motion. The matter came on for trial before a jury on 5 December 2012 in Wake County Superior Court, the Honorable Paul Ridgeway, Judge presiding.

The evidence presented at trial tended to show that on 6 December 2011, a law enforcement officer with the Raleigh Police Department responded to a call from the Wells Fargo Bank located at 150 Fayetteville Street. The responding officer testified that upon his arrival, the bank service manager informed him a man presenting identification with the name Eugene Denning had entered the bank and attempted to cash a business check drawing on the account of Insurance Systems Group in the amount of $4,000.00. The check was handwritten and made payable to Eugene Denning. The authorizing signature was also that of Eugene

Denning. The teller had determined that the check was out of sequence with recent checks cashed against the account and that Eugene Denning had not authorized any of the previous transactions. The teller notified her manager and contacted the owner of Insurance Systems Group who informed her that Eugene Denning was not an authorized signer for the account and that the check was not to be cashed.

A few minutes prior to the arrival of the police officer, defendant exited the bank leaving the check with the bank teller. The teller also retained photocopies of the identification cards defendant had presented, a North Carolina-issued identification card and a social security card. Based on the picture identification as well as a description of defendant, law enforcement officers located defendant and transported him back to the bank for a show-up identification. At the show-up identification and again at trial, the bank manager identified defendant as the man who attempted to cash a business check against the account for Insurance Systems Group.

At trial, the president of Insurance Systems Group, Charles Kerr, testified that on 6 December 2011, he received a call from a bank teller at Wells Fargo informing him that a check had been submitted against the Insurance Systems Group bank account for

$4,000.00. Kerr testified that no check had been issued by the Insurance Systems Group for $4,000.00. Kerr further testified that after receiving notice that someone had attempted to cash one of his business checks he looked around his office, located on the second floor of an office complex located at 827 North Bloodworth Street. A cell phone and a business check were missing. Kerr did not know defendant. However, an officer worker on the first floor of the 827 North Bloodworth Street office complex testified that she recognized defendant as a man she observed walking around the office complex on 5 December 2012, the day before defendant attempted to cash the $4,000.00 check.

At the close of the State's evidence, the trial court dismissed the charge of larceny of a chose in action. Defendant did not present evidence during the trial phase addressing the substantive charges, but following the jury's guilty verdicts, defendant testified during the sentencing phase addressing his habitual felon status.

At the close of the phase on the substantive charges, the jury returned guilty verdicts against defendant on the charges of felony breaking and entering and attempting to obtain property by false pretense. After the close of the evidence

submitted during the sentencing phase defendant was found guilty of attaining habitual felon status. The trial court entered a consolidated judgment in accordance with the jury verdicts and sentenced defendant to an active term of 77 to 105 months. Defendant appeals.

_____

On appeal, defendant raises the following issues: (I) whether the trial court committed plain error by trying defendant; and (II) whether the trial court erred in admitting evidence of the identification defendant submitted to the bank.

*I*

Defendant argues that the trial court committed plain error by proceeding with defendant's trial when he was demonstrably incompetent to proceed. Defendant contends that the trial court violated General Statutes, section 15A-1001(A), and violated defendant's due process rights protected by the Fourteenth Amendment to the United States Constitution and Article I, section 19 of our State Constitution. We disagree.

> No person may be tried, convicted, sentenced, or punished for a crime when by reason of mental illness or defect he is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner. This

> condition is hereinafter referred to as "incapacity to proceed."

N.C. Gen. Stat. § 15A-1001(a) (2013). "The question of the capacity of the defendant to proceed may be raised at any time on motion by the prosecutor, the defendant, the defense counsel, or the court." *Id.* § 15A-1002(a).

> [U]nder the Due Process Clause of the United States Constitution, [a] criminal defendant may not be tried unless he is competent. As a result, [a] trial court has a constitutional duty to institute, *sua sponte*, a competency hearing if there is substantial evidence before the court indicating that the accused may be mentally incompetent. In enforcing this constitutional right, the standard for competence to stand trial is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him.

*State v. Whitted*, 209 N.C. App. 522, 527, 705 S.E.2d 787, 791 (2011) (quoting *State v. Badgett*, 361 N.C. 234, 259, 644 S.E.2d 206, 221 (2007)).

Defendant argues that his behavior at trial should have raised *bona fide* doubts as to whether he understood the process he was to undergo, the charges he was accused of or the punishment he was facing, and whether he was able to assist his attorney. Defendant argues that "[w]hile at times he seemed to

reference the matters at hand, he demonstrated an inadequate understanding of the nature and object of the proceedings against him." Specifically, defendant draws attention to his comments made before the trial court prior to empaneling the jury, at the close of the State's evidence during the first phase of the trial and his testimony during the sentencing phase of the trial.

Defendant's case came on for trial during the 5 December 2012 criminal session of Wake County Superior Court before Judge Ridgeway. Prior to trial, the prosecutor noted for the record that a question as to defendant's capacity to proceed had previously been raised and that on 2 October 2012 Judge Stephens found defendant capable of proceeding. Following this statement, Judge Ridgeway allowed defendant an opportunity to address the court out of the presence of the jury. Defendant requested that his counsel be removed and that he be granted pre-trial release. Furthermore, defendant detailed the circumstances of his 6 December 2011 arrest; argued that because there was no evidence of damage to a door, there was no evidence of a breaking in reference to the felony breaking and entering offense; and argued why a check was not evidence of a crime.

The trial court denied defendant's motions to remove his counsel and for pre-trial release and proceeded with the trial.

At the close of the State's evidence, out of the presence of the jury, defendant made a motion to call a witness, a detective who had observed defendant upon his arrest and interview at the police station. The trial court denied defendant's motion to subpoena the detective on the basis that defendant failed to meet "a minimal showing" but did not preclude defendant from calling the detective as a witness for the defense.

Defendant's comments as shown by his motions and detailed arguments before the trial court, though not effective, do not indicate an inability to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner. *See* N.C.G.S. § 15A-1001(a).

Following the jury's guilty verdicts on the charges of felony breaking and entering and attempting to obtain property by false pretense, the trial entered the sentencing phase to determine whether defendant should be sentenced as an habitual felon. The State sought to establish that, as indicted, defendant had attained the status of habitual felon predicated

on prior convictions for felony breaking and entering and two prior convictions of felony larceny. Evidence presented to establish habitual felon status included defendant's guilty plea to the charge of felony breaking and entering of a motor vehicle.

Following the State's presentation of why defendant should be sentenced as an habitual felon and after conferring with counsel, defendant testified in his own defense. During his testimony, defendant greeted the jury and touched on several topics, including: his enrollment at Shaw University; where his parents previously worked; and who may be elected as President of the United States. However, defendant also spoke to his impression that his sentencing exposure was "a little harsh." Defendant asserted that he did not believe he had been convicted of three felonies and contested whether he had previously broken into a vehicle.

> So I look at it that if you think that I'm a habitual felon, . . . I don't think that if the jury got three felonies on me, I would love to see them myself. I don't think I've broken into no three cars. So anything like three cars, that's like breaking into my mother [sic] car. I'm not going to do anything like that.

Again, although his approach was perhaps not effective, defendant clearly understood that he was facing a possibly

"harsh" sentence as an habitual felon, and tried to convince the jury that he did not commit one or more of the predicate felonies. From this record it appears that defendant did understand the nature and object of the proceedings against him, comprehended his own situation in reference to those proceedings, and was able to assist in his defense in a rational manner. *See* N.C.G.S. § 15A-1001(a); *see also Whitted*, 209 N.C. App. at 527, 705 S.E.2d at 791 ("[T]he standard for competence to stand trial is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." (citation omitted)). Accordingly, defendant's argument is overruled.

## II

Next, defendant argues that the trial court committed reversible error by admitting into evidence copies of defendant's State-issued identification card and social security card. We disagree.

During the phase of the trial addressing defendant's substantive charges, the prosecution called to testify both the Wells Fargo bank manager and the bank teller who interacted with defendant. The bank manager testified that before defendant

left the bank, the teller had a copy of his identification.  The bank teller testified that when defendant attempted to cash his check against the Insurance Systems Group account, he provided a "North Carolina issued ID" and a social security card and that she made a copy of those identification cards.

> Q. What is State's Exhibit Number 5?
>
> A. It's an identification card and a social security card.
>
> Q. And is that actually a photocopy of an identification card and a social security card?
>
> A. Yes.
>
> Q. And is that a photocopy that you made there at the bank when they were presented to you along with that check?
>
> A. It looks like it.
>
> . . .
>
> Q. And the social security and identification card that you received, what name was on those?
>
> A. They both had Mr. Denning's name up there and they did match. The social security card name and the identification card name was identical.
>
> Q. And what was that name?
>
> A. It said Eugene Oliver Denning.

Defendant argues that the trial court violated the best evidence rule, codified under General Statutes, section 8C-1, Rule 1002. "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute." N.C. Gen. Stat. ' 8C-1, Rule 1002 (2013).

Even presuming that it was error to admit the photocopy of the State-issued identification card and social security card in violation of the best evidence rule, which we do not, *see id.* at § 8C-1, Rule 1003 ("A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."), the photocopy was admissible to corroborate the testimony of the bank manager and teller narrating the events in the course of defendant's attempt to obtain property by false pretenses. *See id.* at § 8C-1, Rule 402 ("All relevant evidence is admissible . . . ."); *State v. McGraw*, 137 N.C. App. 726, 730, 529 S.E.2d 493, 497 (2000) ("Corroborative evidence by definition tends to strengthen, confirm, or make more certain the testimony of another witness." (citation omitted)). Accordingly, defendant's argument is overruled.

No error.

Judges McGEE and STROUD concur.

Report per Rule 30(e).