An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-857

NORTH CAROLINA COURT OF APPEALS

Filed: 4 February 2014

STATE OF NORTH CAROLINA

    v.

CHERYLE DHONYALE DAVIS

Iredell County
No. 09 CRS 59431

Appeal by Defendant from judgment entered 20 July 2012 by Judge Joe Crosswhite in Iredell County Superior Court. Heard in the Court of Appeals 8 January 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Sandra Wallace-Smith, for the State.*

> *Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Anne M. Gomez, for Defendant.*

STEPHENS, Judge.

### Procedural History and Evidence

Defendant Cheryle Dhonyale Davis appeals from the judgment entered upon her conviction of second-degree murder in connection with the death of her romantic partner, Rodney

Herron. As discussed herein, we find no error in Defendant's trial.

Defendant and Herron had been engaged in a highly volatile, occasionally violent relationship on and off since 2001, with Herron sometimes living with Defendant. In February 2009, following an incident in which Herron choked her, Defendant bought a handgun. In November 2009, Herron and Defendant were living together. On the evening of 26 November, Defendant was sleeping when she heard a voice say several times, "This is your final hour." Defendant was unsure where the voice was coming from or whether she was dreaming, but as she woke up, she heard the voice tell her to start an argument with Herron. Defendant went into the living room and began shouting at Herron. An argument ensued. Eventually, Herron went into the bedroom while Defendant remained on the sofa in the living room. At some point, Herron came to the door of the bedroom, standing about four feet from Defendant. As he turned to walk back into the bedroom, Defendant, holding the handgun under a pillow, shot Herron in the back. Defendant called 911, upset and distraught. When police officers responded to the scene, Defendant was screaming hysterically and waving the handgun in the air. One

officer was able to disarm Defendant and place her under arrest. Herron died as a result of the single gunshot.

Defendant remained in jail from the time of her arrest until being released on bail in late July 2010. She neither sought nor received any mental health services during that time, and there were no reports of any bizarre behavior on her part during her incarceration. However, in June 2011, Defendant's mother drove her to Davis Regional Medical Center ("DRMC") because Defendant was talking in the third person and claiming that the "Holy Ghost" speaking through her. Defendant was diagnosed with psychotic disorder, prescribed medication, and referred to a walk-in clinic for aftercare. However, Defendant did not follow up with outpatient treatment. In October 2011, Defendant's family took her to Broughton Hospital. She reported symptoms of depression, hearing voices, and a belief that Herron sometimes possessed her body. Defendant was diagnosed with anxiety disorder, her medication was discontinued, and she was discharged with instructions to seek outpatient follow-up care.

On 10 March 2012, two days before her murder trial was scheduled to begin, Defendant went to the emergency room of DRMC, reporting symptoms of depression and psychosis. She was involuntarily committed and taken to Broughton Hospital for

further evaluation, but was released after two days. Following a 13 March 2012 hearing, the trial court ordered an evaluation of Defendant's capacity to proceed to trial pursuant to N.C. Gen. Stat. § 15A-1002(b)(1) (2011) ("When the capacity of the defendant to proceed is questioned, the court shall hold a hearing to determine the defendant's capacity to proceed."). Following her evaluation and a competency hearing in May 2012, Defendant was found capable of proceeding to trial.

Defendant's case came on for trial two months later on 9 July 2012. On the morning of 17 July, during presentation of the State's case, the State offered Defendant a plea to voluntary manslaughter with a mitigated sentence. Because Defendant wanted to discuss the offer with family members who were not then in court, the testimony continued. After Defendant spontaneously said, "She stood and she's going to continue to stain[,]"[1] the trial court called a recess so that Defendant could confer with defense counsel. Following a brief discussion, defense counsel reported that Defendant had asked defense counsel to make a motion to withdraw. Defense counsel reported to the trial court that Defendant was upset with

---

[1] The meaning of Defendant's comment is unclear. It is quoted here exactly as it appears in the trial transcript.

defense counsel's trial strategy.  Following a discussion with Defendant and defense counsel, the trial court denied the motion to withdraw, and the trial proceeded, with the jury ultimately returning a verdict finding Defendant guilty of second-degree murder.  This appeal followed.

*Discussion*

Defendant's sole argument on appeal is that the trial court erred in failing to conduct a second competency hearing *sua sponte* during trial.  We disagree.

Our General Statutes provide that

> [n]o person may be tried, convicted, sentenced, or punished for a crime when by reason of mental illness or defect he is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner.  This condition is hereinafter referred to as "incapacity to proceed."

N.C. Gen. Stat. § 15A-1001(a) (2011).  The question of a defendant's capacity to proceed (also referred to as "competency") can "be raised at any time on motion by the prosecutor, the defendant, the defense counsel, or the court."

N.C. Gen. Stat. § 15A-1002(a).[2]  "When the capacity of the defendant to proceed is questioned, the court *shall* hold a hearing to determine the defendant's capacity to proceed."  N.C. Gen. Stat. § 15A-1002(b) (emphasis added).  "[A] trial court has a constitutional duty to institute, *sua sponte*, a competency hearing if there is substantial evidence before the court indicating that the accused may be mentally incompetent."  *State v. Young*, 291 N.C. 562, 568, 231 S.E.2d 577, 581 (1977) (citation and internal quotation marks omitted).

> Further, under the Due Process Clause of the United States Constitution, a criminal defendant may not be tried unless he is competent.  As a result, a trial court has a constitutional duty to institute, *sua sponte*, a competency hearing if there is substantial evidence before the court indicating that the accused may be mentally incompetent.  In enforcing this constitutional right, the standard for competence to stand trial is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him.
>
> In addition, a trial judge is required to hold a competency hearing when there is a *bona fide* doubt as to the defendant's

---

[2] This statute has been amended with an effective date of 1 December 2013.  However, the version quoted and discussed in this opinion is the version in force and applicable during Defendant's trial.

> competency even absent a request. Evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant to a *bona fide* doubt inquiry.

*State v. Whitted*, 209 N.C. App. 522, 527, 705 S.E.2d 787, 791 (2011) (citations, internal quotation marks, and brackets omitted; some italics added).

On appeal, Defendant contends that the trial court was required to hold a second competency hearing during her trial because (1) defense counsel questioned Defendant's competency to assist in her defense and (2) Defendant's mental health history and behavior at trial raised a *bona fide* doubt about her competency to proceed. As to defense counsel's comments, our careful review of the transcript reveals that defense counsel's concern about Defendant's ability to assist in her defense were focused on Defendant's negative attitude toward defense counsel and her trial strategy, rather than on Defendant's capacity or competency. After telling the trial court that Defendant had asked defense counsel to move to be allowed to withdraw, defense counsel remarked:

> Judge, I have no question about my ability to continue in this trial. I'm not — I have had no questions or qualms about what I have chosen to do strategically in this trial to this point. *My client, however, has expressed extreme displeasure.* I have tried

- 8 -

to discuss her issues with her. She does not — she will tell me some of the things that she has issues with. I tried — *I've tried to explain to her why I'm not focusing on those things and why I have made the decisions to focus on the issues that I believe are most important. I think that she fails to understand or appreciate the decisions that I have made*. She just — I'm not sure that she's going to be willing or able to assist me in the trial of her case. Not, — I don't know — we've had her — we've had mental health professionals evaluate her ability to participate in the trial of her own case and the question of competency was asked and was answered by the mental health experts at Central Regional. She was determined to be competent to stand trial. However, she is extremely hostile to me, and I'm not sure why. And, you know, maybe she can address that a little further with you; but I'm trying to do the very best I can. I have prepared witnesses. I am prepared to put on a defense case. I zealously cross-examined the witnesses. I have made the points that I intended to make; and I am prepared to continue, but she has the right to participate and, in fact, needs to have the ability to do that, and *I'm just not sure that she's able to — because of her attitude and opinion at this point, able to assist me in the defense of her case. She just won't communicate with me*.

(Emphasis added). Where a defendant's "attitude, rather than a mental illness or defect, prevent[s] him from assisting in his own defense[,]" competency under section 15A-1002 is not implicated. *State v. Brown*, 339 N.C. 426, 433, 451 S.E.2d 181, 186 (1994).

Likewise, we conclude that, taken as a whole, Defendant's mental health history and behavior at trial did not raise a *bona fide* doubt regarding her capacity. While Defendant had a history of mental health issues, including past diagnoses of, *inter alia*, post-traumatic stress disorder, psychotic disorder, and schizophrenia, she was determined to be competent to assist in her defense only two months before her trial began. Further, the doctor who evaluated Defendant at that time concluded that she did not have a severe mental illness.

Moreover, as Defendant herself notes, "a defendant's competency to stand trial is not necessarily static, but can change over even brief periods of time." *Whitted*, 209 N.C. App. at 528-29, 705 S.E.2d at 792. Defendant notes two occasions of allegedly "irrational behavior" during her trial: First, on the fourth day of trial, Defendant apparently made some "disruptive" gestures during playback of a video recording made by one of the law enforcement officers who responded to her 911 call just after she shot Herron. The trial transcript does not further describe the gestures, but they cannot have been loud or overly disruptive as counsel for the State, who was playing back the recording and examining a witness at the time, did not even notice them.

Second, on the sixth day of trial, during an off-the-record discussion between two attorneys for the State, Defendant said, "She stood and she's going to continue to stain."  After the jury was sent out of the courtroom, Defendant then said, "She's not going to be Miss Davis'[s] lawyer after today, and I'm telling you-all that Miss Davis has the holy spirit.  So you just better get it through your heads.  Get her someone else. She's not going to defend her."  Immediately thereafter, Defendant asked defense counsel to move to be allowed to withdraw, as discussed *supra*, and the trial court gave Defendant an opportunity to be heard:

> THE COURT: All right.  [Defendant], I will — with respect to that request on behalf of your attorney, I'm going to give you an opportunity to say anything that you want to say about that.  I think [defense counsel] has made that motion [to withdraw].  I think she's made it on your behalf.  I certainly want to give you a chance to add anything to that that you would like to add to that.

> []DEFENDANT: I've been trying to explain to [defense counsel] that I'm not in control of the outburst or the episode that happened just a few minutes ago and that has happened prior to me being in the court; and I don't know how that I can explain it to her, but she will need to be further educated or have more knowledge of what is actually happening with me in order to be able to defend me professionally and be able to, you know, exactly what is happening and what I'm going to need as far as my defense, and that's all

I can say. If she does not know that, then I would rather have someone else to defend me.

THE COURT: Yes, Ma'am. Well, I know that you have been evaluated by several doctors who have provided an opinion; and I'm certain that's what [defense counsel] is relying on as well. What I want to do is, I mean it's been almost 45 minutes the Court has been interrupted again at this point. This is the second time in this trial the Court has been interrupted. There's been several other times that we have given recesses at other times to let you have a chance to speak with [defense counsel] or just to collect your thoughts on this. I told you early on, every opportunity — if you need to take a break, let [defense counsel] know, and we'll certainly do that. So we have tried every way we can to accommodate you; and I want you to understand that I'm trying to give you every opportunity to be present and participate in this trial.

This trial is extremely important to you. It's extremely important to your family. They have been here this entire time. They have stood by you. They have supported you in this. However, please understand that I have to be fair to everyone, and I can't let these interruptions continue to interrupt the trial; and there are — I just want you to understand that we're going to try to proceed in a few minutes. If you do consider or do continue to cause interruptions in court, then I'm going to consider other options. One of those options that I do have to consider is having you removed from the courtroom; and I tell you, I don't want to do that. That is detrimental to your case. It is detrimental to [defense counsel]'s ability to represent you; and I absolutely don't want to get there. That's why I'm continuing to give you these warnings and give you every

opportunity. That's why I let your brother come back and speak with you for a little bit. But I want you to understand, I can't let those outbursts continue to be disruptive of the court. That's not fair to the jury. It's not fair to the other people in this courtroom as well. So I'm doing everything I can to give you every opportunity to do that. I also do know at some point this morning, I don't even know if there's been much relevant discussions on it, I do know there was a new offer extended by the State. I don't know if you've had time to discuss that with your client or with her family. If that's something you want to address now or ready to bring the jury back in and proceed, you know, but [Defendant], I understand your concern. I have — I think [defense counsel] is a wonderful lawyer. Tried several cases with her. I think she's doing a great job on your behalf. But she needs your help. She needs you to be there and she needs you to help her. And your family is here to support you, and you got a lot of people in here to support you. Okay. So we're going to try to continue on. But I guess I'm telling you that because I don't want to get to the point that I have to consider other options, but I can't let this matter continue to be interrupted.

[]DEFENDANT: I understand, Judge.

Trial then proceeded without further interruption that day or the three remaining days of trial. Defendant gave evidence on her own behalf and was lucid throughout her testimony. In sum, Defendant made "gestures" on the fourth day of her trial — the nature of which are not revealed by the record before this Court — and spoke a single sentence to herself out loud on one other

occasion, but otherwise behaved appropriately in court, was able to respond intelligently to questions from the court, her counsel, and the State, and displayed no signs of incompetence or incapacity.

In contrast, in *Whitted*, where we concluded the trial court had erred in failing to conduct a competency hearing *sua sponte*, the defendant offered the following

> substantial evidence indicating that she was possibly mentally incompetent during her trial:
>
> • At her first court hearing, the magistrate noted her past history of mental illness, specifically paranoid schizophrenia. Defendant rejected a favorable pretrial plea offer, remarking that her appointed counsel worked for the State.
>
> • After opening statements, the trial court set a $75,000 cash bond. Defendant responded with an emotional outburst, telling the trial court she did not care whether she got life in prison. She also told the trial court she was guilty, stating, "That's what you want."
>
> • On the third day of her trial, Defendant refused to return to the courtroom because she felt her rights were being violated, and stated she felt she could rely on her faith. When Defendant was brought forcibly into court, handcuffed to a rolling chair after having been tasered, she chanted loudly and sang prayers and religious imprecations, refusing to be silent or cooperate with trial proceedings.

> • Later, for sentencing, Defendant was brought back to the courtroom strapped to a gurney, again singing, crying, screaming[,] and mumbling as the trial court pronounced sentence.

*Id.* at 527-28, 705 S.E.2d at 791-92. Here, Defendant did not chant, scream, cry hysterically, or have to be restrained like the defendant in *Whitted*, nor had she previously been found incompetent to stand trial. *See also State v. McRae*, 139 N.C. App. 387, 533 S.E.2d 557 (2000) (finding the trial court erred in failing to conduct a competency hearing *sua sponte* where the defendant, who suffered from schizophrenia, had been evaluated at least six times in the preceding year and half and been found to be competent to stand trial at some points but not at others).

We conclude that Defendant's behavior was not substantial evidence that she might be incompetent such as would raise a *bona fide* question about her capacity to proceed. Accordingly, the trial court did not err in failing to conduct a competency hearing during Defendant's trial.

NO ERROR.

Judges STEELMAN and DAVIS concur.

Report per Rule 30(e).